**Maggie DAVIS, Plaintiff-Appellant,**

v.

**VILLAGE PARK II REALTY CO., Carabetta Enterprises, Inc., and Joyce Furlong, Defendants-Appellees.**

**No. 615, Docket 77–7506.**

United States Court of Appeals, Second Circuit.

Argued Feb. 23, 1978.

Decided April 21, 1978.

Francis X. Dineen, New Haven, Conn. (Judith Hoberman, New Haven, Conn., on the brief), for plaintiff-appellant.

Christine S. Vertefeuille, New Haven, Conn. (Michael Susman, New Haven, Conn., on the brief), for defendants-appellees.

Before FRIENDLY, MULLIGAN and MESKILL, Circuit Judges.

MESKILL, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the District of Connecticut, Jon O. Newman, *Judge*, dismissing a complaint in a civil rights action on the ground that all the issues raised in the suit had become moot. We reverse and remand for further proceedings.

Bella Vista is a housing project for the elderly in New Haven, Connecticut, which is subsidized under Section 236 of the National Housing Act, as amended, 12 U.S.C. § 1715z–1. Bella Vista II is one of four buildings in the project and is owned by Village Park II Realty Company, a limited partnership. Carabetta Enterprises, Inc., is the general partner of Village Park II, and it is also the management agent for Bella Vista. Joyce Furlong is Carabetta's manager. Plaintiff-appellant Maggie Davis, a tenant in Bella Vista II, is the president of the Bella Vista Tenants' Association. She and the Association have been outspoken advocates of the interests of the tenants in the project, especially with regard to management proposals to increase rents, security deposits and utility charges. In April of 1977, Davis received a letter signed by Furlong, on behalf of Carabetta, notifying her that Village Park II had elected to terminate her month-to-month tenancy. In May, she received a statutory notice to quit her apartment. Conn.Gen.Stat. § 47a–23.

On May 31, 1977, Davis filed this action seeking injunctive and declaratory relief as well as damages, costs and attorneys fees. The complaint alleges violations of Davis' rights to freedom of expression and association and to procedural due process. Davis simultaneously filed motions for a temporary restraining order and a preliminary injunction. Later in the day on May 31, Judge Newman granted the motion for a T.R.O. and issued an order restraining the defendants from evicting Davis pending a decision on her motion for a preliminary injunction. Shortly after this order was issued, counsel for the defendants informed the judge and counsel for Davis that the defendants did not intend to pursue the eviction proceeding. On June 6, the date which had been set for a hearing on the motion for a preliminary injunction, counsel for the defendants represented on the record that the eviction proceeding would not be pursued, and Davis withdrew her motion for a preliminary injunction. As a result of these events, Davis no longer pressed her claims for injunctive or declaratory relief, and she abandoned her due process claims.

After the defendants informed the district judge that they did not intend to pursue the eviction proceedings, they filed a

motion to dismiss the complaint. The defendants argued that Davis' claims for injunctive and declaratory relief were moot and that she had no claim for damages because she had not been evicted. In response, Davis amended the complaint to allege that the threat of eviction caused her "anxiety, distress and hardship, and . . . had, a chilling effect upon [her] First Amendment rights." The district judge granted the motion because the claims for injunctive and declaratory relief were concededly moot and because, under his reading of *Laird v. Tatum*, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972), Davis' alleged injury was not judicially cognizable.

■ The district judge read *Laird* too broadly. That case did not hold that chilling effect is not legally cognizable; rather, it held that the chilling effect alleged *in that case* was so remote and speculative that there was no justiciable case or controversy and therefore the federal courts lacked jurisdiction under Article III of the Constitution. The Court went to considerable lengths to distinguish prior cases in which claims of chill had been recognized. *Id.* at 11–14, 92 S.Ct. 2218; *see Baird v. State Bar of Arizona*, 401 U.S. 1, 91 S.Ct. 702, 27 L.Ed.2d 639 (1971); *Keyishian v. Board of Regents*, 385 U.S. 589, 87 S.Ct. 675, 11 L.Ed.2d 629 (1967); *Lamont v. Postmaster General*, 381 U.S. 301, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965); *Baggett v. Bullitt*, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964). *See also N.A.A.C.P. v. Alabama ex rel. Patterson*, 357 U.S. 449, 462, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). Davis' complaint, as amended, alleges that the defendants attempted to terminate her lease because of her membership in, and her leadership activities on behalf of, the tenants' association. The complaint further alleges that the attempt to terminate the lease was designed to chill her First Amendment rights and that it in fact had that effect. The threat of eviction is alleged to have caused anxiety, distress and hardship. These allegations are sufficient to ensure that the requisite case or controversy exists.

■ The defendants argue, in apparent reliance upon the rule that "if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason," *Helvering v. Gowran*, 302 U.S. 238, 245, 58 S.Ct. 154, 158, 82 L.Ed. 224 (1937); *see C-Suzanne Beauty Salon, Ltd. v. General Insurance Co.*, 574 F.2d 106, 111 n.8 (2d Cir. 1978), that neither the alleged wrong nor the alleged injury is sufficiently serious to support an award of damages. Although this may influence the size of the award, it does not preclude recovery. If the wrong complained of is a mere technical violation of the plaintiff's constitutional rights and she is unable to prove actual damage, she would nevertheless be entitled to a recovery of nominal damages. In the recent case of *Carey v. Piphus*, 435 U.S. 247, 266, 98 S.Ct. 1042, 1054, 55 L.Ed.2d 252 (1978), the Supreme Court explained, in connection with a violation of the right to procedural due process, that, "[b]y making the deprivation of such rights actionable for nominal damages without proof of actual injury, the law recognizes the importance to organized society that those rights be scrupulously observed." Certainly, the rights to freedom of expression and association are no less important to organized society than the right to procedural due process. The *Carey* decision also makes it clear that the plaintiff may recover for the mental and emotional distress actually caused by a violation of the plaintiff's civil rights. *Id.* at 264, 98 S.Ct. at 1052 & n.20; *see Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); *Curtis v. Loether*, 415 U.S. 189, 195–96 n.10, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974); *Fort v. White*, 530 F.2d 1113, 1116 (2d Cir. 1976); *Stolberg v. Members of the Board of Trustees*, 474 F.2d 485, 489 (2d Cir. 1973). The availability of either nominal or substantial damages is sufficient to prevent this case from becoming moot. *See Powell v. McCormack*, 395 U.S. 486, 495–500, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969).

Finally, we note that the defendants' allegedly wrongful conduct required the plaintiff to hire counsel to bring this action to prevent her eviction, and only after suit was brought did the defendants agree not

to pursue the eviction proceedings. In these circumstances, the defendants' potential liability for attorney's fees under 42 U.S.C. § 1988 is an additional factor which prevents this case from becoming moot.

■ Like the district judge, we express no view on the merits. On remand, at least five important issues must be explored. The district court must determine whether there is governmental action. *See Lopez v. Henry Phipps Plaza South, Inc.*, 498 F.2d 937, 942 & n.2 (2d Cir. 1974); *McQueen v. Drucker*, 438 F.2d 781 (1st Cir. 1971). The court must also determine whether the threat of eviction was made in retaliation for Davis' exercise of First Amendment rights. *See Perry v. Sindermann*, 408 U.S. 593, 598, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). If Davis can prove that protected conduct was a substantial motivating factor in the decision to terminate her lease, then the defendants must be given the opportunity to show that that decision would have been made even without the protected conduct. *See Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 283–87, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Insofar as Davis' cause of action is based not upon an actual loss of her apartment but upon a chill of her First Amendment rights, she must prove that she was actually chilled in the exercise of her rights. If she was not, then she may not recover on this basis. *See Laird v. Tatum*, 408 U.S. 1, 13–14 n.7, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972). If she proves that the threatened eviction was in retaliation for the exercise of First Amendment activities, she may recover nominal damages as well as actual damages for proved emotional distress over the prospective loss of her home, along with attorneys' fees in the court's discretion. If she proves that loss of her home could not have been averted except by the institution of legal proceedings, these fees may include compensation for services in connection with the temporary restraining order and the motion for a preliminary injunction.

The judgment of the district court is reversed and the case is remanded for further proceedings consistent with this opinion.